[No. A040390. First Dist., Div. One. May 23, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH FRED HINES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. Portions deleted are noted by the insertion of the following symbol at the points of omission [[/]].

**COUNSEL**

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, and Donald J. Ayoob, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Aileen Bunney, Theresa Canepa and Brenda P. Reyes, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLMDAHL, J.**—Defendant was convicted for the first degree burglary of two houses and the receipt of stolen property taken from those houses in the burglaries. He contends on appeal that his convictions for receipt of stolen property cannot stand, that one of the first degree burglary convictions cannot stand because the house involved had no one living in it, and that the trial court erred in reading CALJIC No. 2.15 (1984 rev.) to the jury, allowing an inference of guilt on the burglary charges from defendant's conscious possession of loot taken in those burglaries.

We agree with defendant as to his convictions for receipt of stolen property, but otherwise affirm.

### Statement of Facts

On the night of March 22-23, 1987, Troy Cox and defendant committed two burglaries in the area south of Fort Bragg in Mendocino County. The first house burglarized was that of Charlotte Aldama. The second house burglarized belonged to William Bergin. Loot taken in the Bergin burglary included a portable Sony stereo cassette player with a distinctive piece of tape wrapped around the power cord where a puppy had chewed it. Julie Gore accompanied the burglars in the car which they used, but did not go into either of the burglarized houses with them.

On April 3, 1987, a Mendocino County deputy sheriff found defendant in possession of the cassette player taken in the Bergin burglary and wearing

shoes with a tread pattern on the soles matching that of footprints which had been left in Aldama's house. Defendant claimed that he had bought the stereo from a guy for $60.

At his trial, defendant presented an alibi defense and claimed that Gore was the person who had sold him the stereo for $60, which Gore denied when she appeared as a rebuttal witness.

### Procedural History

As a result of her involvement in the two burglaries described above, Gore was convicted of receipt of stolen property, as a misdemeanor, by plea, and sentenced to serve 30 days in the county jail. An information filed May 20, 1987, charged defendant and Cox with the two burglaries and with the receipt of stolen property taken in those burglaries. Cox entered pleas of guilty to the two burglary counts. Defendant proceeded to trial on all counts, with Cox and Gore appearing as witnesses for the People.

A jury found defendant guilty on all four counts and found the two burglaries to be burglaries of the first degree. The trial court sentenced defendant to serve six years in state prison for the Bergin burglary and six years, concurrent, for the Aldama burglary. The trial court's treatment of the receipt of stolen property counts is confusing. The judge imposed no sentence on either count, but then ordered a suspension of execution for the count involving the Bergin loot and a stay of execution for the count involving the Aldama loot, with completion of defendant's prison terms for the burglaries to be followed by dismissal of the Bergin receiving count, and a permanent stay of execution on the Aldama receiving count.

[[/]]*

. . . . . . . . . . . . . . . . . . . . . .

### CALJIC No. 2.15 (1984 rev.) as Depriving Defendant of Due Process of Law*

[[/]]*

. . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 945.

*Sufficiency of Evidence for First Degree Burglary Conviction*

Bergin's testimony revealed the following facts about his burglarized house. The house is the second of two houses on five acres of land which Bergin owns. The two houses are about 200 yards apart, connected by a walkway. The first house is the primary Bergin family residence. Bergin bought the second house primarily to give his family greater privacy. He has used it as a guest house and as a rental unit, and once threw a dinner party in the second house, about two weeks before the burglary. He considers the second house to be an extension of the first, so that the two houses both are part of one family home. Although the second house was fully furnished, including beds and bedding, no one was using the second house as his or her sleeping quarters at the time of the burglary.

Penal Code section 460, subdivision 1,[2] declares, "Every burglary of an inhabited dwelling house . . . is burglary of the first degree." Section 459 defines "inhabited" as meaning "currently being used for dwelling purposes, whether occupied or not." In the present case, the trial court instructed the jury, in accord with CALJIC No. 14.52, as follows. "Now, an inhabited dwelling house is a structure which is occupied and customarily used as a dwelling; and the temporary absence of the occupants does not change the status of such."

■ Defendant contends that, as a matter of law, Bergin's burglarized house was not an inhabited dwelling house and that defendant's conviction for the Bergin burglary, if not reversed, must be modified to a conviction for second degree burglary. Defendant places particular reliance on *People* v. *Fleetwood* (1985) 171 Cal.App.3d 982 [217 Cal.Rptr. 612].

We note initially that defendant's own beliefs as to the nature of the house have nothing to do with the question of the degree of his burglary. ■ "[I]n a prosecution for first degree burglary, the fact that a defendant does not know that the building he is about to burglarize is a residence is irrelevant." (*People* v. *Parker* (1985) 175 Cal.App.3d 818, 824 [223 Cal.Rptr. 284]; accord, *People* v. *Cardona* (1983) 142 Cal.App.3d 481, 484 [191 Cal.Rptr. 109]; see *People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 844-848 [193 Cal.Rptr. 54].)

We note secondly that no physical connection existed between Bergin's two houses which would qualify the second house as being a mere physical extension of the first. ■■ Although a burglary of a storeroom connected to an inhabited dwelling by a roofed breezeway constitutes first degree burglary under sections 459 and 460, subdivision 1 (*People* v. *Coutu* (1985) 171 Cal.App.3d 192, 193 [217 Cal.Rptr. 191]), there is no evidence

---

[2] All statutory references, unless otherwise noted, are to the Penal Code.

in the present case indicating that the walkway connecting Bergin's two houses was roofed. In *People v. Picaroni* (1955) 131 Cal.App.2d 612, 617-618 [281 P.2d 45], the court determined that burglary of a garage which was a separate building connected to an inhabited dwelling house by a cement walk "would be burglary of the second degree."

A valid finding that defendant's burglary of Bergin's second house was first degree burglary thus depends on whether the use to which the Bergin family put that house made it "an inhabited dwelling house," within the meaning of section 460, subdivision 1. (*People v. Marquez* (1983) 143 Cal.App.3d 797, 801 [192 Cal.Rptr. 193], quoting *People v. Lewis* (1969) 274 Cal.App.2d 912, 918 [79 Cal.Rptr. 650].)

*People v. Cardona, supra,* 142 Cal.App.3d at page 483 states a very simple use test for determining whether a structure is an inhabited dwelling house—"[T]he crucial element in determining whether a house is being used for dwelling purposes is whether anyone sleeps in it." *People v. Fleetwood, supra,* 171 Cal.App.3d at page 987, adopts the *Cardona* sleeping test—"A place is an inhabited dwelling if a person with possessory rights uses the place as sleeping quarters intending to continue doing so in the future." Defendant states the sleeping test as follows: "A structure must have an identifiable resident, who . . . sleeps there, or having done so intends to do so again in the future, in order to be considered inhabited" within the meaning of section 460, subdivision 1. The evidence reveals no such identifiable resident for Bergin's second house.

The People point out that *Cardona* involves a burglary committed in 1981, when the version of section 460 then in effect defined first degree burglary as "burglary of an inhabited dwelling house . . . committed in the nighttime." (Stats. 1978, ch. 579, § 23, p. 1985.) A 1982 amendment gave us section 460 in its current form and eliminated nighttime entry as an element of first degree burglary. (Stats. 1982, ch. 1297, § 1, p. 4786.) The People thus contend that *Cardona*'s equation of habitation with use as sleeping quarters is no longer a valid equation. *Fleetwood,* of course, reaches a different conclusion, but without actually rejecting or even considering the People's point. We thus do not accept *Fleetwood* as authority for the proposition that the 1981 amendment to section 460 has no impact on the validity of the *Cardona* sleeping test. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 258, fn. 13 [219 Cal.Rptr. 420, 707 P.2d 793]; *People v. Superior Court (Himmelsbach)* (1986) 186 Cal.App.3d 524, 538 [230 Cal.Rptr. 890].)

■ "[T]he Legislature's distinction between first and second degree burglary is founded upon the risk of personal injury involved." (*People v. Wilson* (1989) 208 Cal.App.3d 611, 615 [256 Cal.Rptr. 422]; accord, *People v. Lewis, supra,* 274 Cal.App.2d at p. 920.) Burglary of business premises,

even though such premises might have people on them, is not burglary of the first degree because it does not carry the peculiar risks of violence and resulting injury which inhere in the burglary of a home. (*Ibid.*) "[T]he fact that a building is used as a home . . . increases such danger: a person is more likely to react violently to burglary of his living quarters than to burglary of other places because in the former case persons close to him are more likely to be present, because the property threatened is more likely to belong to him, and because the home is usually regarded as a particularly private sanctuary, even as an extension of the person." (*Ibid.*) These considerations are not exclusively applicable to the part of a home where people sleep. They apply as well to the parts where household members bathe, cook, eat, play, and entertain their guests. Nor does physical separation of such other parts of the home from sleeping quarters significantly diminish the danger of a confrontation turning violent. A burglar is no more welcome in an outlying cookhouse than he or she is in a bedroom.

As we noted in *People v. Zelaya* (1987) 194 Cal.App.3d 73, 75 [239 Cal.Rptr. 289], the common law of burglary, developed during times when a substantial home typically included several separate buildings, held that " '[t]he dwelling house . . . includes the privy, barn, stables, cow houses, dairy houses, if they are parcel of the messuage, though they are not under the same roof or joining contiguous to it. . . . And when a burglary is committed in one of these outbuildings the indictment may charge the offense as done in the mansion house.' " (Quoting *People v. Stickman* (1867) 34 Cal. 242, 244, which relies on 1 Hale P.C. 557-558.)

█ Burglary of Bergin's second house was burglary of his home, part of an inhabited messuage. The danger of a violent confrontation there was at least as great as it was in the burglary of two basement storage rooms containing property of tenants of the apartment building above, which we found to constitute first degree burglary in *People v. Zelaya, supra*. It was significantly greater than it would have been in the burglary of a summer cottage with a identifiable resident who was away for the winter but planned to move in and start sleeping there in June. (Cf. *People v. Guthrie, supra,* 144 Cal.App.3d at p. 846, quoting Perkins on Criminal Law (3d ed. 1982) p. 259.) It was comparable to the danger which inhered in the first degree burglary of Emma Lindemann's unoccupied house, perpetrated over a year after Lindemann had been confined to a boarding residence. (*People v. Marquez* (1983) 143 Cal.App.3d 797, 799-802 [192 Cal.Rptr. 193].)

Bergin's testimony, to the effect that he considered his second house an extension of his home, and describing the uses to which he put that second house, constituted sufficient evidence to support defendant's conviction for first degree burglary rather than second degree.

## Convictions for Receipt of Stolen Property

■ Defendant contends that because his two convictions for receipt of stolen property involve the very property which was stolen in the burglaries of which he stands convicted, his receiving convictions must be reversed, citing *People* v. *Jaramillo* (1976) 16 Cal.3d 752, 757 [129 Cal.Rptr. 306, 548 P.2d 706]. The People agree.[3]

*People* v. *Stewart, supra,* 185 Cal.App.3d 197, squarely supports defendant's position. Defendant's receiving convictions cannot stand. (*Id.* at p. 210.)

We modify the judgment in the following respects. The verdicts as to counts two and four of the information, charging receipt of stolen property, are vacated, and counts two and four are dismissed. In all other respects, the judgment is affirmed.

Racanelli, P. J., and Stein, J., concurred.

A petition for a rehearing was denied June 22, 1989, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 16, 1989.

---

[3] Upon initial consideration of defendant's contention, we reasoned as follows. A well established rule exists to the effect "that one may not be convicted of stealing and of receiving the same property." (*People* v. *Jaramillo, supra,* 16 Cal.3d at p. 757, citing four cases; 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 630, pp. 707-710, citing 15 cases; cf. *People* v. *Tabarez* (1988) 206 Cal.App.3d 551 [253 Cal.Rptr. 658] [convictions for robbery and for sale of the same loot affirmed].) However, theft is not an element of burglary, so this rule does not present an impediment to double convictions such as defendant suffered in the present case.

Footnote 2 to the opinion of the court in *People* v. *Stewart* (1986) 185 Cal.App.3d 197, 203 [229 Cal.Rptr. 445] reveals that the Court of Appeal, Third Appellate District was inclined to follow this reasoning when it examined the issue, were it "to write upon a clean slate." The *Stewart* court's research, however, revealed that decisions of the California Courts of Appeal have extended the rationale of *Jaramillo* "to preclude conviction for both burglary and receiving stolen property where the burglarious intent is to steal the property which is the subject of the receiving charge and the burglar in fact steals the property in the course of the burglary." (*Ibid.*) The *Stewart* court concludes, "Under principles of stare decisis we will not reconsider these decisions at this late date." (*Ibid.*) Now that *Stewart* has been added to the weight of authority supporting defendant's position, principles of stare decisis argue even more strongly that this court follow suit.