Filed 12/24/13  P. v. Tapia CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR ANTHONY TAPIA,<br><br>Defendant and Appellant. | F064847<br><br>(Super. Ct. No. CRL003914)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Brian L. McCabe, Judge.

Hassan Gorguinpour, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari L. Ricci, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]Before Levy, Acting P.J., Cornell, J. and Oakley, J.[†]

[†]Judge of the Madera Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Defendant Salvador Anthony Tapia, was convicted by jury of first degree residential burglary (Pen. Code,[1] §§ 459, 460, subd. (a)). Defendant admitted he suffered five prior prison terms within the meaning of section 667.5, subdivision (b), and the trial court ultimately sentenced him to an 11-year prison term.

On appeal, defendant contends the evidence was insufficient to support a first degree burglary conviction, and the trial court impermissibly directed a verdict against him during its instructions to the jury. We agree the record does not support a finding of first degree burglary.

## FACTS

On January 7, 2010, Monica Franco arrived with her children at her father's home to do some laundry. She previously lived in the home, however, she had moved out a few months prior. After moving out, she still went to the home regularly to do laundry and clean the yard. On the day in question, she discovered the television missing from the home. When her father indicated he had not taken the television, Franco took her children outside and called the police. Franco noticed the bathroom window was open and the screen had been removed from the window. Upon further inspection of the home, Franco also noted a bottle of tequila was missing. The responding officer lifted fingerprints from the inside of the window. The fingerprints matched defendant's.

Jose Hugo testified he owned the home in question, and had previously allowed Franco to live there. However, she moved out prior to the burglary. There was no testimony regarding whether Hugo ever lived at the home. Neither Franco nor her father knew the defendant.

---

[1]All references are to sections of the Penal Code unless otherwise indicated.

**DISCUSSION**

**The Evidence Was Insufficient to Support a Finding the
Home Was Inhabited**

Defendant argues the evidence was insufficient to support a finding the home was inhabited for purposes of the burglary statute. We agree.

In assessing a claim of insufficiency of the evidence, our task is to review the entire record, in the light most favorable to the judgment, in order to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Rayford* (1994) 9 Cal.4th 1, 23.)

Section 459 defines burglary as the entry of "any house … with intent to commit grand or petit larceny or any felony." Section 460 states in pertinent part: "Every burglary of an inhabited dwelling house … is burglary of the first degree. [¶] (b) All other kinds of burglary are of the second degree." (§ 460, subds. (a), (b).) The term "inhabited" is specifically defined as "currently being used for dwelling purposes, whether occupied or not." (§ 459.) The terms "residence" and "inhabited dwelling house" have been interpreted to have equivalent meanings. (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1107.)

In the context of the burglary statute, the word "'occupied' means that persons are actually present in a dwelling." (*People v. Guthrie* (1983) 144 Cal.App.3d 832, 840.) The word "inhabited" means the structure is "currently being used for dwelling purposes" whether or not the residence is occupied. (§ 459.) Even if the owner is temporarily absent, the dwelling is still inhabited. (*People v. Guthrie*, *supra*, at pp. 839-840.)

The cases interpreting the meaning of "inhabited" focus on a variety of factors to determine whether the structure is currently used as a dwelling. In *People v. Valdez* (1962) 203 Cal.App.2d 559, 563, there was a burglary of an apartment. The previous

3.

tenant had vacated the premises and the new tenant had not yet moved in. The court found that neither the former tenant, the landlord, or the new tenant were residents of the apartment, and the burglary was of the second degree. (*Ibid*.) In *People v. Cardona* (1983) 142 Cal.App.3d 481, 483-484, a tenant who had moved out of an apartment without the intent to return and continue living there was found to have left the premises uninhabited, even though some property was left behind for storage purposes and the tenant intended to retrieve it in the future.

In *People v. Jackson* (1992) 6 Cal.App.4th 1185, 1187-1189, the tenant was found to be a resident of an inhabited dwelling while in the midst of an uncompleted move out of a burglarized apartment. Hotel rooms, though residence in them is usually temporary, still qualify as inhabited dwellings. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 317-321; *People v. Fleetwood* (1985) 171 Cal.App.3d 982, 986-989.) Habitation is not dependent on the occupant's intention to use the structure for habitation in the future. If the person uses the structure for habitation when the burglary occurs, his or her possible intent to abandon the habitation in the future does not alter its character as an inhabited dwelling. (*People v. Villalobos*, *supra*, at p. 320.)

The use of a dwelling as sleeping quarters is not by itself the determinative factor. Instead, it is a circumstance used to determine whether a home is inhabited. (*People v. Hughes* (2002) 27 Cal.4th 287, 354-355; *People v. Hernandez* (1992) 9 Cal.App.4th 438, 441-442.)

The victims in *Hernandez* were moving from one location to a new apartment. Though the victims had not yet slept at the new location, they had their utilities connected and had moved in all of their belongings. This was sufficient evidence for the jury to conclude the victims were occupying the new location. (*People v. Hernandez*, *supra*, 9 Cal.App.4th at p. 442.)

In *Hughes*, the victim had moved from her apartment many of her possessions and most of her clothing to her boyfriend's home and slept at this location for two weeks prior to her death. (*People v. Hughes*, *supra*, 27 Cal.4th at p. 354.) Because the victim's

4.

furniture was still at her apartment and the utilities remained on, *Hughes* found the evidence did not establish that the victim intended the day she died to be the last day she would inhabit her apartment. The court noted it agreed with the People that the victim's continual presence during the daytime in a dwelling where she kept her personal belongings increased the risk of personal injury and the danger of violent confrontation in the event of a burglary. (*Id.* at p. 355.)

*People v. Aguilar* (2010) 181 Cal.App.4th 966, *People v. Meredith* (2009) 174 Cal.App.4th 1257, and *People v. Marquez* (1983) 143 Cal.App.3d 797 analyze the issue of a property owner who is not staying at a residence when a burglary occurs. In *Marquez*, a case decided by our court, a home was owned by a woman confined to a boarding residence. She had been absent from her home for over two years when it was burglarized. The owner's conservators regularly entered the residence, as did a friend, in order to maintain it. Because the home had not been abandoned and the owner had a future intent to return to her home, we held the home was still an occupied dwelling and affirmed the defendant's first degree burglary conviction. (*People v. Marquez*, *supra*, at pp. 799-804.)

In *Meredith*, the elderly owner of a residence went to the hospital and was later transferred to a skilled nursing facility. The owner asked his accountant and longtime friend to care for his home while he was away. During his treatment at the skilled nursing facility, his residence was burglarized, and the owner thereafter died while on life support. (*People v. Meredith*, *supra*, 174 Cal.App.4th at pp. 1259-1260.) The *Meredith* court rejected arguments by the defendant that there was no evidence the owner intended to return, the owner could not return after being taken off life support, and there was insufficient evidence the dwelling was inhabited. The *Meredith* court found there was evidence from the owner's son that the owner wanted things left the way they were because the owner was planning to return. The owner's intent to return coupled with the absence of evidence that he had moved out or abandoned his intent to return provided

5.

substantial evidence supporting the defendant's conviction for first degree burglary. (*Id.* at pp. 1268-1269.)

In *Aguilar*, the victim of a burglary lived in an apartment with his three sons. A fire occurred in a nearby apartment while the victim was at work. When the victim returned from work, he was allowed to remove some personal belongings. Although the victim's apartment suffered smoke and water damage, his belongings were intact. The victim gathered personal items and clothing for three days and relocated to a hotel. When the victim returned a few days later to recover more belongings, he discovered the defendant in the apartment and using his belongings. (*People v. Aguilar*, *supra*, 181 Cal.App.4th at p. 971.)

The court in *Aguilar* rejected the defendant's argument that the victim's apartment was no longer inhabited because it failed to "focus on the point of view of the victim at the time the burglary occurred." The court noted "there was no evidence the victim had permanently moved out of or abandoned the apartment for dwelling purposes at the time of the burglary." (*People v. Aguilar*, *supra*, 181 Cal.App.4th at p. 971.) The court also noted most of the victim's belongings were inside the apartment and the victim believed he would return to the apartment when repairs to it were completed. The court found the evidence reasonably supported the jury's finding that the apartment was inhabited at the time of the burglary. (*Id.* at pp. 971-972.)

The fact that a dwelling is not the regular residence of its occupants is not dispositive. Vacation homes and second homes remain inhabited even when they are used sporadically by their residents. (*People v. DeRouen* (1995) 38 Cal.App.4th 86, 90-92, overruled on other grounds in *People v. Allen* (1999) 21 Cal.4th 846, 864-866.) This is consistent with the well-established principle that "a house remains inhabited even if the burglary occurs while the residents are away for an extended period of time." (*People v. Cardona*, *supra*, 142 Cal.App.3d at p. 483.) "A structure that was once used for dwelling purposes is no longer inhabited when its occupants permanently cease using it

as living quarters, and no other person is using it as living quarters." (*People v. Rodriguez* (2004) 122 Cal.App.4th 121, 132.)

Thus, it is clear from the above cases that in determining whether a home is inhabited, the "dispositive element is whether the person with the possessory right to the house views the house as his dwelling." (*People v. Cardona*, *supra*, 142 Cal.App.3d at p. 484.) Recently, in *People v. Burkett* (2013) 220 Cal.App.4th 572, the Third Appellate District reaffirmed this principle, although it determined it was the owner's intent to return at the time of vacating the premises rather than at the time of the burglary that prevailed.

Viewing the evidence here, it is apparent the home was uninhabited at the time of the burglary. While it is clear Hugo owned the home, and kept some possessions there, such as a television and a bottle of tequila, Hugo was not asked if he ever lived at the home, used it as a second home, or simply allowed his daughter to live there for a time. In short, there was no evidence Hugo ever inhabited, or ever intended to inhabit, the house.

The only person who testified regarding habitation of the home was Franco. When questioned as to why she was at the home that day, Franco responded, "that's my dad's house. I lived there for two years, but I would still go to wash my clothes there, or dry, or, you know, clean the yard." Defense counsel asked Franco if she was "living" at the home during the time of the burglary, and Franco replied, "No." Franco agreed that she "had stopped living there a couple months before." On redirect examination Franco confirmed she went to the home to do laundry and she did so "regularly." This was the sum total of the evidence of any habitation of the home. There was no evidence regarding what if any possessions were in the home except for the stolen television set, a bottle of tequila, and presumably, a washer and dryer. The evidence indicated the stolen items belonged to Hugo and there was no evidence regarding whether Franco left any of her possessions in the home when she moved out. Indeed, Franco only described the home as her father's, not her own. In short, the evidence at most established Franco was

7.

a regular visitor, using her father's home to do her laundry. What is missing is any evidence that Franco used the home as a dwelling after she moved out in the months prior to the burglary. We find that evidence that a former resident who moved out and returned to the home only to do laundry, without more, is insufficient to support a finding the home was inhabited.

Nor do we find plaintiff's reliance on *People v. Hines* (1989) 210 Cal.App.3d 945, disapproved on other grounds by *People v. Allen*, *supra*, 21 Cal.4th 846, 864, persuasive. There, the victim owned two homes on a five-acre plot of land. The homes were 200 yards apart and connected by a walkway. Although the victim used the primary home as his residence, he also used the second home, which was fully furnished, sometimes as a guest house and once to throw a dinner party. He considered the home to be "an extension of the first, so that the two houses both are part of one family home." (*Hines*, at p. 949.) In determining the second home was in fact inhabited by the family, the court in *Hines* looked to the use by the family as well as the purpose of the burglary statute, explaining:

> "'[T]he Legislature's distinction between first and second degree burglary is founded upon the risk of personal injury involved.' (*People v. Wilson* (1989) 208 Cal.App.3d 611, 615; accord, *People v. Lewis* [(1969)] 274 Cal.App.2d [912,] 920.) Burglary of business premises, even though such premises might have people on them, is not burglary of the first degree because it does not carry the peculiar risks of violence and resulting injury which inhere in the burglary of a home. (*Ibid.*) '[T]he fact that a building is used as a home … increases such danger: a person is more likely to react violently to burglary of his living quarters than to burglary of other places because in the former case persons close to him are more likely to be present, because the property threatened is more likely to belong to him, and because the home is usually regarded as a particularly private sanctuary, even as an extension of the person.' (*Ibid.*) These considerations are not exclusively applicable to the part of a home where people sleep. They apply as well to the parts where household members bathe, cook, eat, play, and entertain their guests. Nor does physical separation of such other parts of the home from sleeping quarters significantly diminish the danger of a confrontation turning violent. A burglar is no more welcome in an outlying cookhouse than he or she is in a bedroom." (*People v. Hines*, *supra*, 210 Cal.App.3d at pp. 950-951.)

In *Hines*, there was no question the victim inhabited the primary home, it was in fact his residence. The question was whether the second home, on the same property and used by the family, was also inhabited. The court concluded it was based upon the evidence that the victim "considered his second house as an extension of his home, and describing the uses to which he put that second house." (*People v. Hines*, *supra*, 210 Cal.App.3d at p. 951.)

The same cannot be said of the home here. There was no testimony that Franco considered the home to be her dwelling. The only testimony on the issue, from both Franco and Hugo, was that she was *not* living there and that she had moved out. There was no evidence she left any property behind in the home. The only items she referred to within the home, namely the television and the bottle of tequila, belonged to her father. Indeed, it is unclear from the record whether the home contained any furnishings whatsoever. Likewise, neither Franco nor Hugo were asked whether they viewed the home as part of their living quarters. No evidence established either had the intent to occasionally visit the home and use it as a dwelling. While there was evidence Franco did her laundry at the home "regularly," there was no indication she ever used the home or intended to use the home in the future as a dwelling. Based upon the lack of evidence as to any person's intent to use the home as a dwelling at the time of the burglary, we cannot find the evidence was sufficient to support the first degree burglary finding.

The evidence was clearly sufficient in all other regards to support a finding of second degree burglary. As such, we will reduce the conviction to second degree burglary. (See *People v. Burkett*, *supra*, 220 Cal.App.4th at p. 583.)

## DISPOSITION

The finding that the burglary was in the first degree burglary is reversed and the burglary conviction is reduced to second degree. The matter is remanded to the trial court for resentencing. In all other respects, the judgment is affirmed.