Filed 8/11/15  People v. Fontillas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CAESAR RAYMOND FONTILLAS,<br><br>　　　　Defendant and Appellant. | C071139<br><br>(Super. Ct. No. 10F02364) |

Defendant Caesar Raymond Fontillas was convicted by jury of seven counts of first degree residential burglary, three counts of attempted first degree residential burglary, and one count of receiving stolen property.  (Pen. Code, §§ 459, 460, 664, 496; unless otherwise stated, statutory references that follow are to the Penal Code.)  The trial court found true the allegations of three prior convictions--arson in 1986 and two residential burglaries in 1993.  On appeal, defendant challenges two sentence

1

enhancements and argues his sentence of 275-years-to-life plus a consecutive 100-year determinate term under the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12) constitutes cruel and/or unusual punishment.  After defendant filed his appellate brief, the trial court issued a sentencing correction order and new abstract of judgment correcting the two enhancement errors.  This leaves only the claim of cruel and/or unusual punishment, which we reject.  We affirm the judgment as modified by the trial court on June 10, 2013.

FACTS AND PROCEEDINGS

The prosecution presented evidence of eight burglaries and three attempted burglaries in Sacramento and Elk Grove between September 2009 and March 2010. Police stopped defendant, who was driving a vehicle reportedly seen by victims, on March 10, 2010.  Defendant had sold or given many of the stolen items to his coworkers at the Sacramento County Regional Wastewater Treatment Plant, where he was gainfully employed as a supervisor earning $8,000 monthly.

The jury heard evidence of the residential burglaries, in each of which the victims testified they arrived home to find forced entry, ransacked homes, and missing items, including computers and other electronics, jewelry, and cameras.  In two of the burglaries, the victims arrived home in time to see a man outside their home who claimed to be checking on a sewage problem in the neighborhood.  One victim identified defendant as that man at trial, while another noted the resemblance but did not give a positive identification.

The victims in the three attempted burglaries testified that defendant or a man resembling him, wearing an orange vest, rang the doorbell.  One victim opened the door. The man asked if her toilets were working properly and asked if she needed any plumbing work done.  She said no and shut the door.  The man resembled defendant. Another victim did not answer the doorbell or the pounding on the door but looked out

2

her upstairs window. When the man started jiggling the doorknob, she called out "who is it?" The man in the orange vest said he was looking for sewer lines. She said she was busy and could not open the door. He drove away in an orange truck. She did not identify defendant as the man. The third victim did not respond when someone repeatedly rang her doorbell and knocked on her door. She then heard a scratching sound and a pop coming from the front door area. She went out through the garage and saw defendant wearing a yellow vest and gloves, trying to pry open her front door with an 18-inch slim jim. She asked him what he was doing. He said he was checking on clogged sewers for the Sacramento County Utilities District, needed to get into the house, and was trying to pry open the door because nobody appeared to be home. She asked him for an ID or business card, but he said he did not have one. She pointed out that the sewer access was outside. Defendant left, telling her to call the sewer company to verify his story. He drove away in a butterscotch-colored GMC Colorado pickup truck. Police later brought her to a location where she identified defendant as the man. She also identified him at trial.

For the charge of receiving stolen property, the jury heard evidence that, on September 14, 2009, a homeowner left home at 7:00 a.m. and returned at 8:30 p.m. to find her home ransacked and burglarized, with no evidence of forced entry and no fingerprints recovered. Missing items included a computer and new printer, jewelry, and $700 cash.

Defendant testified at trial. He denied all charges. He claimed he did not know the items he sold or gave to coworkers were stolen. He claimed he got all items from flea markets, garage sales, Craigslist, or his ex-wife. Defendant admitted he was convicted of four felony offenses in 1993.

The jury found defendant guilty on 11 counts: One count of receipt of stolen property (count two), seven counts of residential burglary (counts three, five, eight, 10, 11, 13, and 17), and three counts of attempted residential burglary (counts 12, 14, and

16). The jury was unable to reach a verdict as to the other counts, and they were dismissed.

In a bifurcated proceeding, the trial court found true that defendant had three prior convictions: A 1986 arson (§ 451, subd. (c)) and two residential burglaries on March 31, 1993.

The defense moved to strike the prior convictions (§ 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497), arguing defendant's parents and girlfriend love him; at the time of his arrest he was gainfully employed by the county; the prior convictions were old and no one was hurt; and he did not commit violence in the present offenses.

In opposition, the prosecutor recounted defendant's extensive criminal history, as reflected in the probation report. In 1979, while a juvenile, he was adjudicated as having committed two counts of residential burglary, an attempted burglary, and receiving stolen property. He next tried to cash a $1,162 check of a victim whose identification had been stolen in a burglary. As an adult, defendant was convicted of residential burglary and attempted residential burglary in 1981 and placed on probation for three years. In 1984, while employed by the California State Board of Pharmacy, he fraudulently issued pharmacy licenses to four women already under investigation for fraud and, in an attempt to hide the evidence, set fires in three government offices, resulting in damage in excess of $300,000. When arrested, he had in his possession blank pharmacy licenses. He posted bond, then failed to appear for his court date.

Defendant fled to Hawaii, assumed a new identity as David Chin, got a job at Tower Records, stole $2,000 from the register, and was arrested but was released before his true identity was discovered. He stole a car, a Versatel card, and cash. He flew to the San Francisco airport, impersonated a rental car agent and stole a car. He drove to Los Angeles and later to Seattle, where he got a job working for a gem buyer. He was ultimately arrested in 1986 on the arrest warrant. Cocaine and $135,000 in stolen gems

4

were found in his Seattle apartment. And he stole from the mail a $35,000 ring belonging to his employer.

Back in Sacramento, defendant was convicted in 1986 of the 1984 arson, possession of stolen property, embezzlement, and falsifying government records. He was sentenced to 116 months in prison. He was paroled in May 1991.

In 1993, defendant was convicted of nine counts of residential burglaries occurring between May and August 1992. He was sentenced to 25 years in prison. He was released on parole in March 2005, got the job with the county, and was discharged from parole in 2008. Despite earning $8,000 per month, defendant resumed burglarizing homes, leading to this prosecution.

The trial court denied defendant's motion to strike the prior convictions, noting this case of a career criminal was exactly the kind of case for which the three strikes law was designed.

At the sentencing hearing on May 4, 2012, the trial court stated it was sentencing defendant to an indeterminate term of 275-years-to-life (25 years-to-life for each of the 11 counts), plus three five-year enhancements for the three prior convictions for a total enhancement of 15 years for each of 10 counts, for a consecutive determinate term of 150 years. The court stated it would impose a section 654 stay on the sentence for count two, receiving stolen property.

On May 14, 2012, the trial court on its own motion recalled the sentence and issued a sentencing correction order, stating there was no need for a section 654 stay for receipt of stolen property, because the jury did not convict defendant of the burglary of that same property. The correction order reimposed the same indeterminate sentence of 275-years-to-life (25-years-to-life for each of the 11 counts). The order also imposed 15 year prior-strike enhancements on each of all 11 counts, which would total 165 years. The court ordered the clerk to prepare an amended abstract of judgment.

The abstract of judgment dated May 14, 2012, correctly shows the indeterminate term (275-years-to-life) but did not follow the court's (erroneous) order to add the prior-strike enhancement to count two, receipt of stolen property.

After defendant filed his opening brief on appeal, the trial court on June 10, 2013, issued another sentencing correction order making two changes. First, the court removed the enhancements from count two, receipt of stolen property, because it is not a serious felony triggering the enhancements (§§ 667, subd. (a)(1), 1192.7, subd. (c)). Second, the court removed one of the three enhancements from each of the remaining 10 counts because two of the prior convictions were brought and tried in the same prosecution, triggering only one five-year enhancement for those two prior convictions. The court issued a new abstract of judgment on June 10, 2013.

Accordingly, defendant's sentence is an indeterminate term of 275-years-to-life plus a consecutive determinate term of 100 years.

DISCUSSION

The new abstract of judgment renders moot two of defendant's contentions, leaving only his claim of cruel and unusual punishment. We will assume for the sake of argument that defendant has not forfeited this claim by failing to raise it in the trial court.

Defendant was 51 years old at trial. His sentence -- 275-years-to-life plus a consecutive 100 years -- is equivalent to a sentence of life in prison, which does not necessarily constitute cruel and unusual punishment under the federal or state Constitutions. (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382-1383 (*Byrd*).)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments" and applies to the states through the 14th Amendment. (*Robinson v. California* (1962) 370 U.S. 660, 675-676 [8 L.Ed.2d 768].) The Eighth Amendment contains a " 'narrow proportionality principle' that 'applies to noncapital sentences.' " (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117] (*Ewing*).) While

6

this proportionality principle " 'does not require strict proportionality between crime and sentence,' " it does prohibit " 'extreme sentences that are "grossly disproportionate" to the crime.' " (*Id*. at p. 23 [155 L.Ed.2d at p. 119].)

This proportionality analysis under the Eighth Amendment requires consideration of (1) the gravity of the offense and harshness of the penalty; (2) the sentence imposed on other criminals in the same jurisdiction; and (3) the sentence imposed for the same crime in other jurisdictions; however, a successful proportionality challenge will be " 'exceedingly rare,' " and it is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play. (*Ewing, supra*, 538 U.S. at pp. 22, 30 [155 L.Ed.2d at pp. 118, 123], quoting *Rummel v. Estelle* (1980) 445 U.S. 263, 272 [63 L.Ed.2d 382, 390] (*Rummel*); *Harmelin v. Michigan* (1991) 501 U.S. 957, 1005 [115 L.Ed.2d 836, 871-872] conc. opn. of Kennedy, J.; *In re Coley* (2012) 55 Cal.4th 524, 537-544 [upheld 25-years-to-life sentence for failing to update sex offender registration].)

The California Constitution, article I, section 17, states: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." The California prohibition is broader than the federal prohibition. (*In re Alva* (2004) 33 Cal.4th 254, 291.) Under the California standard, punishment is excessive if the defendant shows it is so disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity. (*People v. Dillon* (1983) 34 Cal.3d 441, 477-478 (*Dillon*); *In re Lynch* (1972) 8 Cal.3d 410, 424.) Factors include (1) the nature of the offense and the offender; (2) a comparison of the sentence with punishments prescribed in the same jurisdiction for different offenses which, by the same test, must be deemed more serious; and (3) a comparison of the challenged penalty with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision. (*Lynch, supra*, 8 Cal.3d at pp. 425-427.)

7

The burden is on defendant to show disproportionality. (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231 (*Retanan*); *People v. Crooks* (1997) 55 Cal.App.4th 797, 808.)

Defendant's opening brief on appeal offers no proportionality analysis of sentences in California for more serious crimes or sentences in other jurisdictions for the same offense. We take this as a concession that his sentence withstands a constitutional challenge on either basis, just as we did in *Retanan, supra*, 154 Cal.App.4th 1219, where the defendant made no effort to compare his sentence with more serious offenses in California or with punishments in other states for the same offense. (*Id*. at p. 1231 [135-years-to-life for sexual offenses against child victims].)

Instead, defendant relies (as did the defendant in *Retanan*) on a dissenting opinion and a concurring opinion of Justice Mosk that a sentence incapable of being completed in the defendant's lifetime makes a mockery of the law and amounts to cruel and unusual punishment. (*People v. Deloza* (1998) 18 Cal.4th 585, 600 (*Deloza*)) (Mosk, J., concurring); *People v. Hicks* (1993) 6 Cal.4th 784, 797 (Mosk, J., dissenting).) However, as we said in *Retanan*, " ' "no opinion has value as a precedent on points as to which there is no agreement of a majority of the court. [Citations.]" [Citations.] Because no other justice on our Supreme Court joined in Justice Mosk's concurring opinion [in *Deloza*], it has no precedential value.' " (*Retanan, supra*, 154 Cal.App.4th at p. 1231.) Similarly, no other justice joined in Justice Mosk's dissenting opinion in *Hicks*, which did not even involve a cruel and unusual punishment claim. (*Hicks, supra*, 6 Cal.4th at p. 797.) Additionally, we agree with *Byrd, supra*, 89 Cal.App.4th at p. 1383, that it is immaterial that defendant cannot serve the full sentence during his lifetime; in practical effect, the sentence is no different than a sentence of life without possibility of parole.

That leaves consideration of the nature of the offense and the offender. (*Dillon, supra*, 34 Cal.3d at p. 479.)

8

The purpose of the Three Strikes Law is not to subject a criminal to a long sentence based on the latest offense, but to punish recidivist behavior. (*In re Coley, supra*, 55 Cal.4th at p. 542; *People v. Diaz* (1996) 41 Cal.App.4th 1424, 1431.) The State has an interest in dealing in a harsher manner with those who by repeated conduct have shown they are incapable of conforming to the norms of society as established by the criminal law. (*Ewing, supra*, 538 U.S. at p. 29; *In re Coley, supra*, 55 Cal.4th at p. 542.) Habitual offender statutes have withstood constitutional scrutiny on claims of cruel and unusual punishment or disproportionate sentence. (*Rummel, supra*, 445 U.S. at pp. 265-266 [63 L.Ed.2d at p. 386] [life sentence with possibility of parole under Texas recidivist statute for obtaining $120.75 by false pretenses, after prior convictions for $80 credit card fraud and passing a $28 forged check, did not constitute cruel and unusual punishment]; *In re Coley, supra*, 55 Cal.4th at pp. 529, 542; *People v. Ayon* (1996) 46 Cal.App.4th 385, 396-400 [upheld 240-years-to-life sentence, the functional equivalent of a life sentence without possibility of parole, for current armed robberies after prior residential burglaries], disapproved on other grounds by *Deloza, supra*, 18 Cal.4th at p. 600, fn. 10.)

Defendant's storied criminal history, recounted above, amply supports the sentence.

Defendant's argument is based on his false premise that he is not dangerous because he did not physically attack his victims. However, the seriousness of the threat a particular offense poses to society is not dependent solely on whether it involves significant physical injury. (*Rummel, supra*, 445 U.S. at p. 275 [63 L.Ed.2d 392].) Society's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence. (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1415, overruled on other grounds in *People v. Dotson* (1997) 16 Cal.4th 547, 560.) The mere imposition of a life sentence without possibility of parole for offenses dangerous to society does not constitute cruel or unusual punishment under the federal or state Constitutions. (*Byrd, supra*, 89 Cal.App.4th at p. 1383 [robberies].)

9

Residential burglary and attempted residential burglary are serious offenses. (§ 1192.7, subd. (c)(18) & (39).)  Residential burglary is particularly dangerous because the risk of violence is inherent in the crime.  (*People v. Sparks* (2002) 28 Cal.4th 71, 82; *People v. Hughes* (2002) 27 Cal.4th 287, 355 (*Hughes*); *People v. Hines* (1989) 210 Cal.App.3d 945, 950-951, overruled on other grounds in *People v. Allen* (1999) 21 Cal.4th 846, 864.)  " ' " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation--the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence.' " [Citation.]  "In addition, a burglary of an inhabited dwelling involves an invasion of perhaps the most secret zone of privacy, the place where trinkets, mementos, heirlooms, and the other stuff of personal history are kept.  Society therefore has an important interest in seeing to it that burglars stay out of inhabited dwelling houses." ' [Citation.]" (*Hughes, supra*, 27 Cal.4th at p. 355 [home was inhabited though victim was in process of moving out].)

Defendant is wrong on the facts when he wants credit for "tr[ying] hard to avoid any confrontation or contact with the victims."  He did not testify to any such efforts but rather denied having committed the burglaries at all.  On appeal, defendant claims he would break into the victims' home only "[i]f the occupants were not home."  But that is not true.  As evidenced by the attempted burglaries, he would break in if *no one answered the door*.  This does not mean no one was home.  People are entitled to be home and not answer the doorbell.  And defendant *would* break in if people were home, as evidenced by the attempted burglary where the homeowner emerged from the garage and caught defendant trying to pry her door open.  Even when caught, he still attempted entry by telling her he was checking the sewer and needed to get into her house.  He left only after she pointed out the sewer access was outside.  At another home, he asked if the toilets were working properly, suggesting he might have entered if allowed to do so.

10

Defendant's reply brief cites cases holding recidivist sentences to be cruel and unusual where the current offense was minor. That is not the case here.

We conclude defendant's sentence does not constitute cruel and/or unusual punishment.

DISPOSITION

The judgment is affirmed.

      HULL      , J.

We concur:

      RAYE      , P. J.

      BLEASE      , J.

11