[No. D001643. Fourth Dist., Div. One. Aug. 30, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT FLEETWOOD, Defendant and Appellant.

COUNSEL

Nancy B. Sperber, under appointment by the Court of Appeal, for Defendant and Appellant.

Howard C. Cohen as Amicus Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert M. Foster, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

BRAINARD, J.*—Robert Fleetwood appeals his conviction of robbery and burglary.

A jury found Fleetwood guilty of two counts of robbery in an inhabited dwelling, using a deadly weapon and inflicting great bodily harm (Pen. Code,[1] §§ 211, 213.5, 12022, subd. (b), and 12022.7) and one count of burglary upon an inhabited dwelling using a deadly weapon (§§ 459, 460, and 12022, subd. (b)). The court sentenced him to prison for 11 years and 4 months.

FACTS

Debbie B., a prostitute, had lived in a boarding hotel for two weeks when Fleetwood kicked in her door demanding money from her and her customer. After wounding each of them with a knife, he made off with a small amount of money.

ISSUES

The questions presented are as follows:

I. Does an occupied hotel room qualify as a "dwelling house" under section 213.5? Yes.

II. Did the court erroneously equate "occupation" with "inhabitance" in its instructions? No.

III. Was the evidence sufficient to support the jury's finding Ms. B.'s hotel room was a "dwelling house"? Yes.

---

*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise specified.

IV. Was Fleetwood denied effective assistance of counsel? No.

I

■ Fleetwood contends the court erred in sentencing him under section 213.5's harsher sentence for residential robbery. On the burglary count, the judge told the jury: "An inhabited dwelling house is a structure which is occupied and customarily used as a dwelling, and the temporary absence of the occupants does not change its status as such.

"An occupied hotel room is a dwelling house within the meaning of this definition."

On the robbery counts, the judge told the jury: "An inhabited dwelling house within the meaning of Penal Code section 213.5 is a structure which is occupied and customarily used as a dwelling. An occupied hotel room is an inhabited dwelling as used in these instructions. So the definition of an inhabited dwelling house is the same for both robbery and for burglary."

Fleetwood asserts the court erred by stating a hotel room is a dwelling house because section 213.5 should not apply to hotel rooms. Section 213.5 reads: "Every robbery perpetrated in an inhabited dwelling house or trailer coach as defined in the Vehicle Code is punishable by imprisonment in the state prison for three, four, or six years."

It is Fleetwood's position the Legislature did not intend to protect hotel room occupants because it did not also include the "inhabited portion of any other building" language of section 460, subdivision (1)[2] (which applies to burglaries). It is reasoned that the Legislature's omission of said language in its later enactment of section 213.5 reveals a statutory intent to limit section 213.5's protection to house dwellers as opposed to inhabitants of other residential structures.

Robbery is a compound crime against property and persons including elements of both theft and assault. (*People* v. *Guerin* (1972) 22 Cal.App.3d 775, 781 [99 Cal.Rptr. 573], see *People* v. *Ramos* (1982) 30 Cal.3d 553, 587 [180 Cal.Rptr. 266, 639 P.2d 908].) Although intending to deter both theft and personal harm, robbery legislation emphasizes personal protection.[3] Implementing its intent to protect robbery victims, the Legislature has

---

[2]Section 460, subdivision (1) reads: "Every burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree."

[3]The Legislature placed robbery statutes in title 8 of the Penal Code addressing crimes against the person rather than in title 13, crimes against property (*People* v. *Guerin, supra,* 22 Cal.App.3d at p. 782).

developed a statutory scheme increasing sentences for increased victim vulnerability.[4]

Victims inside buildings are more vulnerable to felonious conduct than victims out of doors. (*People* v. *Wilson* (1969) 1 Cal.3d 431, 440 [82 Cal.Rptr. 494, 462 P.2d 22].) Recognizing victims inside their residences are especially vulnerable, the Legislature enacted section 213.5 as an "urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution . . ." (Stats. 1982, ch. 1293, p. 4783) because: "The existing provisions of law are inequitable relative to the sentences for residential burglary and have contributed to the dramatic increases in violent residential burglaries. In order to remedy this situation as soon as possible, it is necessary that this act become effective immediately."

Residential burglary is first degree burglary punishable by two, four, or six years. (§§ 460, 461.) Before enactment of section 213.5, a court could only sentence a residential robber to two, three or five years. Despite a residential robber's greater potential for violence, the sentence for just entering an inhabited dwelling, occupied or not, was greater than the sentence for robbing the victim in his own residence. Viewing this sentencing inequity as partially responsible for the dramatic increase in violent residential robberies, the Legislature enacted section 213.5 to deter residential robberies by equalizing the robbery and burglary statutes. It did not express the intent to reserve these protections for house dwellers only. Intending to implement sentencing equity, the Legislature would not equalize sentences under sections 213.5 and 460, while severely limiting the circumstances to which section 213.5 applies. Creation of parallel sentencing statutes for residential robbery and burglary requires a similarity of both terms of punishment and application. The same meanings should apply to the identical language in both statutes.

■ In section 460, "inhabited dwelling house" means a structure where people ordinarily live and which is currently being used for dwelling purposes. (*People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 838, 848 [193 Cal.Rptr. 54].) A place is an inhabited dwelling if a person with possessory rights uses the place as sleeping quarters intending to continue doing so in the future. (*Id.; People* v. *Cardona* (1983) 142 Cal.App.3d 481, 484 [191 Cal.Rptr. 109].) There may be more than one dwelling under the same roof.

---

[4]Robbery is punishable for two, three or five years (§ 213), unless the victim is "performing his duties as operator of any motor vehicle, streetcar, or trackless trolley used for the transportation of persons for hire" (§ 211a), or the robbery is "perpetrated in an inhabited dwelling house or trailer coach as defined in the Vehicle Code" (§ 213.5). Sentences for these circumstances are for three, four or six years.

Apartments and hotel rooms may be the dwelling house of persons living in them. (*People* v. *St. Clair* (1869) 38 Cal. 137.)

The burglary statutes make no distinction between the character of a burglary of an "inhabited dwelling place" and of an "inhabited portion of any other building." (*People* v. *O'Bryan* (1985) 37 Cal.3d 841, 844 [210 Cal.Rptr. 450, 694 P.2d 135].) These burglaries have the same character regardless of the structure in which they occur. (See also *Wyatt* v. *State* (1971) 4 Tenn.Crim. 1 [467 S.W.2d 811] [hotel room]; *Herbert* v. *State* (Fla.App. 1983) 439 So.2d 971 [motel room]; *People* v. *Germany* (1978) 41 Colo.App. 304 [586 P.2d 1006] [hospital room]; *Jones* v. *State* (Ind.App. 1983) 457 N.E.2d 231 [three-room log cabin]; *State* v. *Auger* (Mo. 1968) 434 S.W.2d 1 [apartment]; *Bacon* v. *State* (1952) 85 Ga.App. 630 [70 S.E.2d 54] [roominghouse]; *Sallee* v. *State* (1931) 51 Okla.Crim. 414 [1 P.2d 794] [bunkhouse].)

 Historically and traditionally, hotel rooms have been included within the definition of a dwelling house. (Perkins, Criminal Law (3d ed. 1982) p. 257.) We are convinced the Legislature intended the same result under section 213.5. Accordingly, we hold that the term "inhabited dwelling house" in section 213.5 includes the "inhabited portion of any other building."

## II

 Fleetwood contends the court's instruction erroneously equated "occupation" with "inhabitance." However, the court's instructions do not equate these terms. In defining "inhabited dwelling" for burglary, the court used "occupation" only to instruct on the necessity of having a current resident. A "dwelling," unoccupied by a person currently using it for living and sleeping, is not a "dwelling" under the burglary statute. (*People* v. *Cardona, supra,* 142 Cal.App.3d at pp. 483-484.) The correctness of the court's use of "occupancy" within the context of the instructions as a whole is shown by its properly stating "dwelling" status was unaffected by the temporary absence of the occupant. Although the court made this distinction less clearly when it later defined "inhabited dwelling" for robbery, the court said the definition was the same for both robbery and burglary. The court's statements as a whole properly instructed the jury on robbery of an inhabited dwelling.

## III

 Fleetwood claims the evidence does not support the jury's finding Ms. B. resided in the hotel room. He asserts the fact the room was furnished

with only two mattresses and a television set shows it was not a dwelling, but a place of business. However, Ms. B. testified:

"Q. How long had you been staying [at the hotel] at [the time of the robbery]?

"A. A week, maybe two.

"Q. You actually were living there at that point?

"A. Yeah, Yes.

"Miss B[.], were you residing in room 217 when this occurred?

"A. Yes, sir.

"Q. And how long had you been staying in that particular room prior to that evening?

"A. About a week, a week and a half."

The night manager for the hotel testified Ms. B. was staying at the hotel, paying as much as two weeks rent in advance. ■ We must view the "evidence in the light most favorable to [the] respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Although Ms. B. clearly engaged in acts of prostitution on the premises, the jury had substantial and sufficient evidence to find she also resided therein.

## IV

■ Fleetwood contends he was denied effective assistance of counsel. He claims his attorney acted improperly by agreeing to the court's instruction an inhabited hotel room was an inhabited dwelling house, and by specifically requesting the court not instruct the jury on any possible lesser included offenses.

■ All defendants are entitled to adequate legal counsel. (*People* v. *Pope* (1979) 23 Cal.3d 412, 424 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) ■ However, the defendant has the burden of proving his counsel failed to act as would reasonably competent attorneys diligently advocating their client's rights. (*Id.*, at p. 425.)

 Here, the court had denied Fleetwood's motion to dismiss the section 213.5 allegation before trial. At trial, Fleetwood offered an alibi defense, denying any involvement in the crimes alleged. On this basis, Fleetwood's counsel declined the court's offer to instruct on lesser included offenses:

"THE COURT: . . . And from our discussions and based upon the nature of the case and the defense offered, is it your conclusion, . . . that there be no instructions concerning any possible related lesser offenses?

"[COUNSEL]: Your honor, in this matter, since we have offered an alibi defense and Mr. Fleetwood has denied any commission in the situation, we would ask the court not to include any related or lesser included offenses as an alternative to those that are charged in the information."

The record reveals Fleetwood's counsel made a knowledgeable tactical choice. Fleetwood does not show his counsel failed to act as a reasonably competent attorney nor that his actions precluded a potentially successful defense. (See generally *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144].)

In light of our upholding the correctness of the court's instruction regarding inhabited dwelling houses, any possible error by counsel in failing to object to this instruction did not prejudice Fleetwood's defense in any manner.

The judgment is affirmed.

Staniforth, Acting P. J., and Butler, J., concurred.

A petition for a rehearing was denied September 27, 1985, and appellant's petition for review by the Supreme Court was denied December 18, 1985.