[No. B026530. Second Dist., Div. Seven. Mar. 10, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW JONES, Defendant and Appellant.

**COUNSEL**

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Marc E. Turchin and Maria J. Perez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Defendant was convicted of setting fire to an inhabited structure, the most serious form of arson. (See Pen. Code, § 451, subd. (b).)

The house he set fire to was the one he and others had been evicted from the day before. The sole question on appeal is whether, at the time of the fire, the house was "inhabited" as defined in Penal Code section 450, subdivision (d).[1]

## FACTS

Defendant and others residing in a rented house were evicted by the county marshal after the landlord obtained an unlawful detainer judgment. The day after the eviction defendant set fire to the house. The evidence adequately establishes defendant is guilty of arson and that is not an issue on appeal. Rather, defendant contends there was insufficient evidence to show the house was inhabited within the meaning of Penal Code section 450, subdivision (d).

The evidence shows that after the eviction the former tenants were allowed to retrieve their clothing from the house and then they dispersed, except for defendant. Defendant was seen leaving the house the morning after the eviction with other persons not identified as former tenants. No one testified they saw defendant remove anything from the house. Some clothing and furniture were in the house at the time of the fire but there was no testimony as to whom they belonged. Defendant was seen hanging about in the park across the street from the house during the day after the eviction. He was also seen entering and leaving the house several times that day. The house was set on fire later that same day.

## DISCUSSION

### I. An "Inhabited Structure" Is One Actually Being Used as a Dwelling at the Time of the Fire, Regardless of the Possessory Rights of the Inhabitant.

Defendant argues that, as a matter of law, the house was not "currently being used for dwelling purposes" because he and the other tenants had been evicted the day before, no new tenants had moved in and neither had the owner. Defendant denies there was evidence sufficient to prove the former tenants intended to continue using the house for dwelling purposes after they were evicted. Even if there was such evidence, defendant contends it was irrelevant because the tenants no longer had a possessory right to the premises.

---

[1] Penal Code section 450, subdivision (d) provides: "Inhabited means currently being used for dwelling purposes whether occupied or not."

We reject defendant's interpretation of Penal Code section 450. The fact the former tenants have been evicted from the premises does not establish they are no longer using the premises as a dwelling. As the evidence in this case demonstrates, as soon as the evicting officers and landlord leave the tenants may re-enter the premises. If their possessions remained in the house it would be quite easy for them to go right on living there, at least until the landlord discovered them.

The fact the evicted tenants have no possessory right to the premises is of no consequence to the crime of arson. The question is whether the house was inhabited, not whether the inhabitants had a legal right to be there. For example, if a tenancy is for a specific term, it ceases automatically at the expiration of the term. (Civ. Code, § 1933, subd. 1.) If the tenant continues in possession he may be evicted through an action for ejectment, quiet title or unlawful detainer but his *possessory rights* ended at the expiration of the term. Nevertheless, if an arsonist burnt the house down after the lease expired but while the tenant was still living there it would defy logic and the clear intent of the Legislature to hold the house was not "inhabited" for purposes of Penal Code section 450.

Defendant relies on a sentence taken out of context from *People* v. *Fleetwood* (1985) 171 Cal.App.3d 982, 987 [217 Cal.Rptr. 612]. There the court while interpreting Penal Code section 213.5, a robbery statute, remarked, "A place is an inhabited dwelling if a person with possessory rights uses the place as sleeping quarters . . . ." The issue in *Fleetwood* was whether a hotel room qualified as an "inhabited dwelling house." There was no issue of the tenant's possessory right to the room. Defendant also cites *People* v. *Cardona* (1983) 142 Cal.App.3d 481, 484 [191 Cal.Rptr. 109], a burglary case, in which the court stated, "The dispositive element is whether the person with the possessory right to the house views the house as his dwelling." Again, the "possessory right" to the house had nothing to do with the case. In the next sentence, the court held, "The Fullers no longer *used* the Jefferson Street house as their dwelling and thus it was not inhabited when the burglary occurred." (*Ibid.,* italics added.)

We also reject the People's argument that it is unnecessary someone be making use of the structure as a dwelling at the time of the fire so long as the purpose of the structure is to serve as a dwelling. This interpretation would lead to results that are logically unacceptable and inconsistent with legislative intent. Under the People's argument, if the owner-occupant of a house died, the house would be "inhabited" by a dead person. Or, a shack in the remote wilderness, used one week a year, would be considered "inhabited" the other fifty-one weeks. Moreover, the punishment for setting

fire to a vacant shack would be greater than for setting fire to a church or synagogue. (See Pen. Code, § 451, subds. (b), (c).)

The legislative intent behind Penal Code section 450, subdivision (d), can be gleaned from the history of California arson statutes which we recount here briefly. The first arson statute, enacted in 1850, made it a crime to burn "any dwelling house" but did not define the term "dwelling house." (Stats. 1850, ch. 99, § 56, pp. 234-235.) In 1856, arson was divided into degrees. First degree arson included burning "in the nighttime, any dwelling-house in which there shall be at the time some human being . . . ." Second degree arson included burning a dwelling house in which no one was present. The statute further provided, "Every house . . . which shall have been usually occupied by persons lodging therein at night, shall be deemed a dwelling-house of any person so lodging therein . . . ." (Stats. 1856, ch. 110, §§ 4, 6.)

Subsequent amendments did not materially alter the statute until 1929. In that year, section 447a was added to the Penal Code defining arson in part as burning "any dwelling house" but the provisions defining a "dwelling house" were repealed. (Stats. 1929, ch. 25, § 1.) Finally, the arson statute was revised in 1979 to provide, "Arson that causes an inhabited structure . . . to burn is a felony . . . ." (Pen. Code, § 451, subd. (b).) The statute defines "structure" as a "building" and "inhabited" as "currently being used for dwelling purposes whether occupied or not." (Pen. Code, § 450, subds. (a) and (d); Stats. 1979, ch. 145, § 6.)

If the statute still read as it did in 1929, the People's argument would have some merit. At that time the statute merely referred to a "dwelling house" without reference to habitation or occupancy. Indeed, the closest case on the facts we have found is one where the tenants moved out of a rented house and five days later the owner himself set fire to it. On appeal, the owner argued the arson statute was unconstitutional insofar as "it makes it unlawful for a man to burn his own unoccupied dwelling." (*People v. George* (1941) 42 Cal.App.2d 568, 571 [109 P.2d 404].) The court held the statute to be constitutional. While it did not explicitly address the issue of what constitutes a dwelling house, the court implicitly found the vacant building was a dwelling house or it would not have reached the constitutional issue.

As can be seen from the review of the arson statute, the Legislature has taken various approaches to the burning of a dwelling. During some periods it has left the term without a definition. During other periods it has defined it as a building "usually occupied" or "currently being used." The present requirement that the building is "currently being used" is certainly more limiting than the mere reference to a "dwelling house" and more restrictive

than the 1856 requirement the building "shall have been usually occupied by persons lodging therein . . . ." We have not consulted an 1856 dictionary, but Webster's Third New International Dictionary (1981) defines "usually" as "by or according to habit or custom" "more often than not" "most often" and "as a rule"; it defines current as "occurring in or belonging to the present time," "in evidence or operation at the time actually elapsing." If arson under section 451, subdivision (b), could be established by merely proving the defendant set fire to a "dwelling house" or a building "usually occupied" as a dwelling then, clearly, defendant's conviction would have been proper. But, the requirement the structure be "currently used" for dwelling purposes requires the People to prove at least one of the evicted tenants intended to continue living in the house after the eviction.

This conclusion is consistent with the interpretation given identical statutory language in Penal Code section 459 applying to burglary. (*People* v. *Cardona, supra,* 142 Cal.App.3d at pp. 483-484; *People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 838 [193 Cal.Rptr. 54].) Each of these cases involved tenants who had moved out of a residence. In each case the court held that whether or not the structure was "inhabited" depended on the intent of the tenants to continue living there. Thus, in *Cardona,* the court held the house was not inhabited after the tenants moved out intending never to return even though the term of their tenancy had not yet expired and they had not completed moving all their belongings out of the house. (142 Cal.App.3d at pp. 482-484.) "Where . . . the residents have moved out without the intent to return, the house becomes uninhabited, i.e., it is no longer being used for dwelling purposes." (*Id.* at p. 483.) On the other hand, in *Guthrie,* the house was held to be inhabited even though the tenants had left for an indefinite period. The evidence showed the tenants intended to return to the house after they recovered from the shock of a murder that occurred there. The tenants did not tell their landlord they were going to vacate the premises, they did not cancel the utilities, file change address cards with the post office or remove any furniture. (144 Cal.App.3d at p. 836.) "[A] residence is still 'inhabited' . . . even though the residents of the house are temporarily away from the premises, where they have indicated no intention to stop living there." (*Id.* at p. 838, citations omitted.) Thus, we conclude it is the present *intent* to use the house as a dwelling which is determinative.

*People* v. *Green* (1983) 146 Cal.App.3d 369 [194 Cal.Rptr. 128], cited by the People, is not at all on point. In that case, the defendant set fire to the apartment previously vacated by his estranged wife. The apartment was located in a large apartment building. The defendant contended that because his wife had vacated her apartment he had not set fire to an "inhabited structure" within the meaning of Penal Code section 450, subdivision (d). This argument had no support under the statute which defines "struc-

ture" as "any building." (*Id.* at p. 749.) *People* v. *Green* does not stand for the proposition a vacated single family house can be considered inhabited merely because it is in a residential neighborhood.

II. *There Was Insufficient Evidence to Prove the House Was Actually Being Used for Dwelling Purposes at the Time of the Fire.*

■ Because inhabitation is an element of the crime of arson under Penal Code section 451, subdivision (b) the burden was on the People to prove beyond a reasonable doubt the house was inhabited at the time of the fire. The People failed to sustain this burden.

In order to meet this burden, the People had to show someone had the present intent to use the house as a dwelling at the time of the fire. (See discussion, *ante*.) The evidence shows that the tenants were physically evicted from the premises by the county marshal the day before the fire. They were allowed to remove their clothing from the house at the time of the eviction. No one was seen re-entering the house the day of the eviction and, except for the defendant, none of the tenants were seen again in the vicinity of the house. Defendant was seen leaving the house the next morning with three or four other people. During that day he was seen going in and out of the house and hanging around in the park across the street. There was evidence some clothing and furniture remained in the house after the eviction, but there was no testimony as to whom it belonged.

Viewing this evidence in the light most favorable to the People, *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], it does not support a finding any of the tenants intended to continue using the house as a dwelling place. The fact some clothing and furniture remained in the premises is not determinative. (See *People* v. *Cardona, supra,* 142 Cal.App.3d at p. 482.) There was no evidence anyone slept in the house after the eviction. (See *Cardona, supra,* 142 Cal.App.3d at p. 483; *People* v. *Fleetwood, supra,* 171 Cal.App.3d at p. 987.) The fact defendant and others, not identified as former tenants, were seen leaving the house at 8:30 or 9 a.m. does not support an inference any of them spent the night there. Even if defendant did spend the night in the house, setting fire to a house contravenes an intent to use it for dwelling purposes.

## DISPOSITION

The judgment convicting defendant of arson of an inhabited structure (Pen. Code, § 451, subd. (b)) is modified so as to convict him of arson of a structure (Pen. Code, § 451, subd. (c)) and is affirmed as so modified. The

cause is remanded to the trial court for resentencing under Penal Code section 451, subdivision (c).

Lillie, P. J., and Thompson, J., concurred.